The next matter, number 24-1350, Daewoo Technology USA, Inc. v. Feng Zhang. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. May it please the Court. Darren Janis on behalf of Dahua Technology USA. Judge Rickleman, if I could reserve two minutes for rebuttal. You may. Thank you. The district judge in this case got the facts right, but then misapplied the law. When the case was previously before this Court, the Court identified three triable issues of fact that it thought were material to determining which party was entitled to a judgment. Those three issues of fact were, first, whether Dahua was mistaken as to the severance amount in the release agreement. Second, whether Zhang was under the similar mistake. And third, if he was not under the same mistake, whether he knew or should have known of the mistake. After bench trial, the district judge found three things. First, that Dahua was mistaken as to the severance amount in the release agreement. And she went on to find specifically that it should have said that the severance amount was a total of $680,000 payable over 16 months. She also found that Mr. Zhang was also mistaken about that. And third, that if he was not mistaken, he had reason to know of the mistake. However, the Court did not reform the contract, did not reform the severance amount in the release agreement. Okay, can we start honing down? So the district court says to reform a contract, the court must therefore find that the precise terms of a contract had been orally agreed upon between the parties, and the written instrument afterwards signed fails to be as it was intended an execution of the previous agreement, and then cites to the German-American case from 1881. That's not the restatement standard. So then we face, okay, so maybe that's reversible error because the wrong standard was used. Maybe it wasn't. It depends on how you understand the fact findings. You read the fact findings as supporting that there was an oral agreement because you couldn't have had a mistake unless there had been a prior understanding. And if Zhang had reason to know there was a mistake, then he had reason to know that there was a prior oral agreement as to his severance payments. Maybe other people would read it differently. We don't know quite what the fact findings would have been if the district court had applied the correct standard. Okay. But all that that does is get you into the restatement section 155. And once you're there, it says the court may, at that point, apply equitable considerations in its decision to whether to reform a contract or not. We agree thus far? We do. Okay. The district court, using different equitable doctrines, concluded that it was not going to restructure the contract. It concluded under Massachusetts law it had no ability whatsoever. So that's a sort of, all right, was the district court error harmless? I've identified two possible harmlessness ones. One has to do with whether there was any form of prior oral agreement as to any term. The second is the application of its equitable discretion. Okay. So could you address those? I will do my best to do so, Your Honor. I will address first the factual findings. And I think that the record is clear that the district judge did make specific factual findings that show that there was an agreement as to the severance amount. And I would point the court specifically to the following places in her findings and conclusions. Many of these are on addendum page 11. But she says, when their discussion at the hotel concluded, Zhang believed that he had an agreement with food to transition within Zhejiang from his executive position to a senior corporate advisor role for a guaranteed two-year term with a $240,000 annual salary in addition to his salary under the 2015 employment agreement. So she found, as a matter of fact, that they agreed at the hotel that the severance amount Why wasn't that just an agreement to continue on with the 2015 agreement, not to It seems to me it's different to say we're going to end it. I mean, it seems to me what Mr. Fu was saying at the hotel was, Listen, we're going to move you into this other thing. We're going to pay you some extra. And we're going to carry on with the 2015 agreement. And we'll be happy. You'll be happy, Mr. Zhang, because you'll do this other job. You'll get everything you were getting before and a little more. And that's kind of what I want. And that's what I read Judge Tong wanted to say. And at the hotel, there was no discussion of that number, right? That number is not discussed. $680,000. Because what they agreed to was that he would receive the salary under the 2015 employment agreement, which was $680,000 payable over 16 months, because that's the term that was given. Judge Counsel, salary versus severance seem to me two completely different things. And what I'm struggling with in your argument is Judge Talwani finds quite clearly that the agreement is for Mr. Zhang to continue working, not be terminated and receive severance. So I don't – I'm struggling to see how what you've quoted on Addendum 11 supports you, because it's an agreement to transition within Zhe Zhang in the same company. That's the opposite of getting severance for having your job terminated. And I understand that, Your Honor. And this is where I think the district judge got off course, is because she was focused on the fact that originally they were talking about him transitioning within the company, and then later it was moving to the other company, which turned that amount from continued salary to severance. And she says later on Addendum 28, she says the sticking point in the negotiations between the parties was not the amount of severance pay. So she understood that the salary under the 2015 agreement is what became the severance. But I think she says that, Counsel, in the context of her ruling, that there was never an agreement to have any kind of severance, because the agreement was to continue working at the company. And so I just wonder if at this point you are making an argument that her findings are clearly erroneous, because, you know, when I read her decision, I looked at, for instance, on Addendum page 22 where she says expressly, although your client argues there was a verbal agreement for 680K in severance, it points to no specific oral agreement. That's a quote. So on what basis are you saying she found the exact opposite of what I just quoted to you? So when she said that our client did not point to a specific oral agreement, that was leading into her discussion about whether there was an oral agreement. She says, because they haven't specifically pointed to one, I'm going to look at what was discussed at the hotel to determine if there was an oral agreement at that point. The key here is that Dahua was asking the court to reform the amount of the severance in the release agreement. The amount is the only thing that matters. The problem that the district judge got into and where she strayed from the restatement is that she was considering these other things, the fact that initially they talked about the transition being within the company. But if I agree at the hotel, we're just carrying on with the 2015, except that my job is going to change from president of North America to senior corporate advisor, and otherwise we're going to carry on. So that's my salary, my benefits, my chance for a bonus, all these things, and we're just going to carry on. And then there's a screw-up with the lawyers. And then I get a written document later that says, actually, you're out of here, non-compete, all these things, 680, everything else is gone. And then we're just supposed to look back and say, well, that's sort of a nicer understanding that I, Mr. Zhang, said, yeah, I like that. And then I get something else. We just pluck the 680 out and say, aha, you agreed to 680? That doesn't strike me as right. And just to clarify, JJ, are you referring to the initial draft? So you have what they say at the hotel, which struck me as, we're going to kind of carry on with the 2015. Your role is going to change. It's going to be kind of a soft, we're going to move you out, but not immediately. We're going to give you this other little position. You're going to get some extra money. It's all nice. We're very happy with each other. Then the LA Piper lawyers send over something totally different. And he says, no. Then they go back to the board in China, and the board says, we don't really want him as an employee here anymore. And there's some back and forth because Mr. Fu had made some promises back at the hotel. And now there's a third set of documents that say, okay, we're going to kind of do what Mr. Fu said. We're going to give you a consulting arrangement. But we're also going to give you a severance agreement, in which you're going to agree to all these things. You're going to lose certain things under that contract. And we're going to pay you severance of X amount. And so there were three separate to me things that happened. And I don't see a through line from the 680 that you tell me is at the end, back to the beginning at the hotel, as opposed to we're just going to carry on with the 2015 agreement. Those don't seem necessarily the same to me. And that, I thought, was what Judge Talwani said. The through line, Judge Aframe, was when Mr. Zhang was presented with that initial draft that was not consistent with what was discussed at the hotel. He said, this is not what I agreed to with Mr. Fu at the hotel earlier. Go sync up with him. In other words, give me what we talked about. That reset things back to the 680. But there was no agreement on 680, counsel. There was no agreement that he was going to be terminated from the company and receive severance. Can you please point us to where in the record there is an agreement, and I agree with you, it just needs to be on that term, an agreement between the parties to reform to about how much he would be paid if instead of continuing with his company, he was being terminated from his company. Where is that in the record? At the hotel, they weren't talking about severance, but they were talking about a specific amount. And what we were asking the court to reform was the amount. And the judge found that the mistake was setting it forth as $680,000 per month instead of $680,000 total. But you agreed to the amount in the air? I mean, you have to agree to the amount in context to something. Like I could agree, give me a dollar. Well, a dollar for what? I mean, it's got to have some connection. So they don't talk about the number. And so you're just saying like because he was going to carry on with the agreement, the salary part carries over as severance. But he didn't agree to that. I thought the suit was about the claim that under the documents, he's entitled to close to a million dollars rather than $680,000. He was claiming that he was entitled to $10.8 million. Okay, $10.8 million. And that it is the severance term which is the basis for the lawsuit. And that was what you were asking to be reformed. Specifically the amount of the severance, which Judge Talwani said was not a sticking point in the negotiations because they had agreed that the amount that he would be paid for leaving his position, his executive position, whether that was within the company as they initially thought or whether it eventually became to go to the subsidiary company, the amount was always the salary under the 2015 agreement. And Judge Talwani continually pointed back to that with her findings. But, Counsel, what they agreed to was the agreement would continue. And the agreement also provided all sorts of other things, including that he could only be terminated for cause or misconduct. So they agreed that he would stay at his company. They did not agree that he would be terminated. And, therefore, when the district court says that, it's because there was no agreement on severance because the agreement was the opposite. It was to continue the job. So, again, is there anything in the record that shows agreement between the two of them on the amount of severance for being terminated? Again, if we're talking about was there agreement for severance, we're talking about other terms of the deal. No, no. You're asking us to reform the amount of severance, and we have to reform it to an amount that they agreed to for severance. So where in the record is there an agreement on the amount of severance for being terminated? It was the amount, as Judge Talwani found, when the discussions at the hotel concluded, they had agreed on two amounts. One was going to be his consulting salary. The other was going to be the compensation for him leaving his executive position and taking the consulting position. Those two amounts never changed. What they were called, what one of them was called, may have changed, but the amount did not change. And that's the point of the restatement is that it's the thing in dispute. And everybody knew when they signed the agreements that the amount that was supposed to be in that agreement, what they had agreed to for severance, was $680,000 payable over 16 months. Is that why the restatement says you only have to have agreement on one term and not all terms of a contract? And even as to that term, does it have to meet all of the, you know, cross the T, dot the I to have a contractual agreement? That's absolutely correct. Okay, so that's a point in your favor, but the suggestion from the questions you've just gotten is that any agreement as to severance was sort of contingent because he thought he was going to continue as an employee for a long time, and they did not, in fact, continue him as an employee. So even as to that term, there was some contingency to it, which, of course, I don't think this was argued to the trial judge. I suppose your response would be, no, she didn't find any contingency when she discussed mistake. And that's absolutely right, Judge Lynch. Hypothetically. Is there any law about contingency under the restatement? Not that I'm aware of. I know that there is one case, I believe it's Lordy v. Lordy. It's a SJC case from 2005. The citation is 443, Massachusetts. I'll tell you what, send us a 28-J letter, please. Okay, I can do that. But let me just respond quickly to your question there. Hypothetically, these other things, whether he was going to consult for the parent company or for the subsidiary, hypothetically that could have led to a different amount if the parties had negotiated the amount further because of those changes in the complete deal that ended up. But they didn't. And Judge Talwani specifically found that there were no further discussions about the amount once they left the hotel. That was it. They had agreed to the amount, and although other things changed in the deal, that amount always stayed the same. And that's what the restatement says, is that you need agreement on the particular point. It says it need not be complete and certain enough to be a contract. If the parties reach agreement as to only part of a prospective bargain, and if they are later mistaken in their attempt to put in writing this agreement together with such other terms as will make a contract, reformation is still an appropriate remedy. Thank you, Counsel. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce themselves on the record to begin? Good morning, Your Honors. Benjamin Flam on behalf of the Appellee, and I have with me my colleague, Philip Gordon. May it please the Court. Turning to the subject of the hotel discussion and the reported agreement there, the District Court was very clear as to what was discussed and what was agreed. Can we step back? Of course, Your Honor. Do you agree that the District Court should not have cited and applied the German insurance standard, that the restatement standard is different? I agree it's different, Your Honor. Okay. Who cited an 1880 case to the District Court if the restatement applies? Can I come to it just before you answer? A slight defense of Judge Talwani. Isn't it true that Taron cites German and actually has that sentence in a parenthetical? Now, maybe she shouldn't have done that, but it wasn't that Judge Talwani went back to 1880. It looks like she copied Taron is what this opinion looks like. Did any party cite German to the Court? Your Honor, I can check the appendix. I can't recall if I did. Okay, that's all right. But Judge Aframe went exactly where I was going to go, which is German has been carried down through Taron, which is still good law. That same paragraph in the decision also cites the restatement at issue. The opinion is internally inconsistent, it seems to me. Like the statement that says we're looking at a point, which is the first thing Judge Talwani says, seems inconsistent with the last sentence that cites German, which all come out of Taron, which sort of says both things. That's correct. So what do we do with all that mess? And I guess that's my question to you. Well, the answer, Your Honor, is we take a look at the facts that the District Court found and we apply the law and we see if there is an error. It's harmless. First, let's, if we could, Judge Lynch, take a look back at what was agreed at the hotel. The District Court was very clear. The number $680,000, that's not what the District Court said. The District Court never says there's an agreement on $680,000. The District Court says, quote, we will follow whatever the agreement says, the 2015 agreement. The District Court further explains that when Zhang left the hotel, and this is at Addendum 11, when their discussion at the hotel concluded, Zhang believed that he had an agreement with Fu to transition within Zhejiang from his position as Chief Strategy Officer, VP, to a Senior Corporate Advisor role for a guaranteed two-year term with a $240,000 annual salary in addition to his salary under the 2015 employment agreement. Nothing in there about $680,000. I'm sorry. Your client wouldn't have given up $680,000 severance for whenever he did depart the company for a $240,000 salary. That doesn't parse. Your Honor, the point is there was never an agreement on $680,000. Then how can there be a mistake if there was never an agreement? So, Your Honor, that's an excellent question. Thank you. I actually have the answer for you from Judge Talwani. Because, and I think that's where my brother got hung up and Amikai got hung up. Well, it's where all of us are hung up. So, on page 31 of the Findings of Fact, Ruins of Law. What addendum site is that? Is it Addendum 31? So, that'll be Addendum 32, Your Honor. The very bottom of the page. When Judge Talwani is closing out her decision, she says that she found that the parties were, quote, mutually mistaken. Now, it's critical to note that for the previous 30 pages, she said there was no mutual mistake. And here's what happened. As the law came from this court, in the decision Judge Lynch wrote in this case in 2021, there are requirements. I was before this court in that case. And the court came down with requirements to establish mutual mistake and earn reformation. You did well in that case. Thank you very much, Your Honor. I'm going to shoot for you just as well today, Judge. Thank you. It's a harder battle. Yes, Your Honor. But if we take a look at Judge Talwani's words, the answer is simple. So, they bear the risk of the mistake. No, no, no. But that's on the affirmative defense. That's on the affirmative defense. I understand. That's not the question, but can I try to just see? So, here's my thought on what I think the question was, which is can you have a mutual mistake without a prior agreement? Yes. Can you have a mutual mistake where we know each other, we've worked together, we've talked about things. I know you. You're not going to go from 680 to 11 million. So, when I see 11 million, while I didn't agree to 680, I know you didn't mean 11 million. Yes. You didn't mean 11 million, so we know it's a mistake. That number's not right, but that still doesn't mean we agreed to the other number. That's exactly right. Can that be the case? Yes, that is the case, and that is what Judge Talwani told us, and I'll get to where in one second, judges. So, Judge Aprim, you're exactly correct. There is a way to be mutually mistaken that 10.8 million was not the right number without having reached a prior agreement on 680. And if we go to the district court's March 2024 order, and now we are at addendum 41, Judge Talwani says, this court has already found there was no prior agreement between the parties concerning Zhang's separation of employment from Zhe Zhang. There was never any discussion about severance. There couldn't have been an agreement about it. And what the appellant skips over is the fact that there is indeed a distinction. It's a question of scope. The discussion at the hotel was about maintaining an employment relationship. So, counsel, let me ask you this, because this is what is troubling me about the case. If you're staying with the same employer, and you're switching roles, and certainly it's not a bigger role that your client switched to, why is he getting paid an extra almost half a million dollars for that? Because there was a one-page contract that they negotiated. The record shows that that guaranteed three-year term was promised because they took him away from a 15-year job. No, I understand that, but I'm trying to make sense of the facts. He's asked to step into a different role, and the agreement is he's staying at the company in a different role. This happens to people all the time.  Why is he getting paid his normal salary under his three-year agreement and an extra $500,000? Because he negotiated really well the first time. He got himself a guaranteed agreement. And what happened was that... My question is, why isn't he just under the agreement getting paid his same salary? Why does Mr. Fu give him an extra $500,000 to stay with the company in a different role? That's my question. Understood, Your Honor. The answer is going to be in the internal strategy memo that is in the record. This company was really scared. They were concerned that he was going to shed light on their product security questions, on their noncompliance with the laws. Yes, we're aware of all of that. How does that amount to $11 million? Well, there's a couple steps in between there, Your Honor, which I'm happy to lay out. So the first thing is Mr. Fu at the hotel had to find a way, as the record shows, to get Mr. Zhang to be amenable to a change. Then they get to the office, and this is where Judge Talwani found that they had acted in bad faith and with unclean hands. That's where the bait and switch came in. So there's two ways you can keep Mr. Zhang not disclosing stuff that would be detrimental to the company. One way is I'll call it the Mr. Fu at the hotel way, which is, here, we're going to keep you in the fold. We're going to keep you coming along, and then we're going to sweeten it for you because you're going to get a lesser job with extra pay on top of your current pay, and you're really happy. We're not going to sign anything. You're not going to do anything. There's not going to be any contracts, and Mr. Fu might have liked that, but the lawyers might not have liked that, and they say that's not certain enough. Now we get documents with releases, and the considerations are different because it's clear, am I right, that lawyers got involved between the hotel and the Waltham office. Yes, Your Honor. So the Fu strategy was sort of internally rejected, but then it went in a different direction. That's correct, Your Honor. The lawyers and the board of Zhejiang got involved is what the record indicates, but it's also, judges, important to remember that Mr. Fu's original thought during these conversations, and it's documented in the record, was come to China and work for the parent in China. We don't need you here in North America anymore. Come to China. We're going to put a younger guy in your job. He actually said that, believe it or not. Come to China. I thought it was an ADA waiver I noticed in the contract. Yes, there are some age discrimination concerns there that are very valid, but Mr. Zhejiang responded, as the district court found, my children are in school here. I can't move to China. It could very well be that we're going to offer him a seven-figure job at the main office. We don't know because that conversation never evolved. So to answer Your Honor's question, how did we get here, we got here because Mr. Fu wanted him to come back to China. He couldn't, so we had to find another way to make him happy. Can I ask a different question? Sure, Your Honor. This is actually different from reformation, which is what we focused on. You probably guessed I'm somewhat sympathetic to the reformation position of Judge Talwani, but I still think it's, and everybody seems to agree, it is all wrong. Like $11 million wasn't the thing, and now there's a windfall to Mr. Zhejiang that probably seems in several times above what it should have been. Why is some sort of, there is some sort of doctrine out there that allows some kind of equity that, if all else fails, a judge can come up with something that's at least closer to something that makes sense, let's say, and $11 million doesn't really make sense. So why, I understand you had Mr. Fu didn't read the contract, he didn't interact with his lawyers in the best possible way, they got the benefits of the contract, and that may mean something more than $680,000, but why does it mean it's like take it or leave it, $11 million or nothing? So, Your Honor, the district court was very clear on the jurisprudence that supports this. I'll start at the end of the analysis, which is the Armstrong decision cited, which says that finality and certainty in contracts, even if it results in an occasional injustice, is the priority. What happens is that under White v. Fessenden, which is the case from this circuit, a district court decided to do just that, to try and solve a problem and substitute terms. And what this court held was, you were well-intentioned, district court, but that's above your pay grade, you simply cannot do that. And that's what the jurisprudence says. There is only one instance where a court can supply terms for a contract that's already there with facts like these. But that is not the restatement 155 standard, and it's saying as a matter of law I'm not going to get into equitable discretion because I find that I'm precluded from doing it because it would involve overriding an express and unambiguous contract, which has to be a reference to the mistaken severance amount. And then she goes into Zhang did not violate a fiduciary duty. That's kind of irrelevant under 155. And then she gets into the company that bore the risk here. Again, not a permissible consideration under 155. So, Your Honor, respectfully, the fiduciary duty question came because the appellants below, Dawa, raised the Dumoulis case, and Judge Helwani was differentiating it. But under 155, Judge, the standard is may. The district court may decide to change a contract, but in this case we have everything from precision management. And then it goes on to say, and it may deny reformation of the contract if it is inequitable and unjust to do so. And that goes back to Judge Afram's question. This seems to be a windfall situation.  And it seems kind of unjust and inequitable to give a windfall when the fact that it is a windfall was not even considered in the exercise of equitable discretion. Your Honor, respectfully, my time is very short, so forgive me if I speak quickly. Judge Helwani actually considered that in great detail. She took a look at all of the circumstances, including the amounts at play. We know from, and I'm not going to give sealed testimony in this open courtroom, but we know from the sealed appendix, page 77 to 82, we know the reasons why Dawa saved over $800 million. And they didn't raise their hand and complain about the contract until after the Lorex acquisition was completed. They got the benefit of his reliance, his compliance. So that's the analysis under the 158, which I guess is what I'm looking at. Section 158, which seems to be sort of a free-floating, if all else fails, there's equity. Yes. And so, yes, she says that. But I guess why is that not an abuse in some sense? Yes, it was worth more than $680,000. No, it wasn't worth $11 million. So why isn't there something else that when all else fails, which is what 158 seems to talk about, and we all seem to agree it's a mistake, I don't really see you disputing that he thought it was $11 million. Why isn't there? I mean, I understand what you said, but there does seem to be 158, and there does seem to be that the Massachusetts has at least done it once, and this Case-Cox that she says is a little bit different, but why can't there be some sort of roughing out the edges of what seems to be a pretty extraordinary windfall? I see my time is up. May I answer your question? Thank you very much, Your Honors. I'm going to try and address the points you've raised briefly. With respect to 158, if you look at the end of it, it says, accounting for the party's reliance interests, and that's where Judge Talwani in the district court's decision said, I can't give them relief under 158 because they're not showing us how to account for the fact that Zhang relied. He honored the contract in every way, and that is baked into 158, specifically that if you're going to make a change under 158, you have to account for the reliance, and there was no accounting for that. They already got that benefit. At the final line of her rejection under 158, Dahua has not offered any authority, matter of law, from which a court may fashion an equitable remedy to override express contract terms as a matter of law, so she didn't engage in the analysis that Your Honor, in a different place she did. Perhaps she should have. But in a different place she did. She said that it is given the circumstances and the amounts in dispute and Dahua's bad behavior, it is not unjust to make them pay the $10.8 million considering that they got the benefit of the bargain and we have to account for Zhang's reliance. So in a different place in the order she actually did that, Judge. Okay. All right. We'll find out. And I can write a 28-J letter to point out the specifics. Judge Aframe, to go to the rest of your question, Turao is distinguishable. In Turao there was an underlying fact in dispute, the amount of property that was being sold, and there was no agency problem there, or there was an agency problem there because the plaintiff wasn't present. It was the lawyer conveying more than he was allowed to convey. That's a very different story than when you have the principal in the room with his counsel. So the district court, I believe, correctly So it all comes down to he should have translated it. I mean, that's the bottom line. And I'm not saying that is or isn't important. It's part of it. But that's the key thing. It's part of it. He should have translated it. He shouldn't have hidden the number from his own lawyers. He shouldn't have tried to trick Zhang into thinking that they had this product. Or his lawyer, or reframing it, that the lawyer should have done a better job understanding what Mr. Fu was saying, which is similar to Turao in that the lawyer screwed up. You can look at this as a lawyer screw-up. Now, the part that you can't look at is that he didn't ask to have it translated, so he doesn't know what his lawyers did. I appreciate that. But you can look at it as a lawyer screw-up problem. You sure can, Judge. But also under Green Viablon, Green Viablon that this court wrote in 2015 gives us, Judge Lopez wrote it, gives us two critical points. Number one, objective manifestation of assent to a contract. When Mr. Fu signed it and slid it across the table, we have the meeting of the minds. But the second thing Green Viablon did is it said in that case it was IP policies. Mr. Green signed a contract that said you accept all these policies. He never went on to read the policies and said I didn't read them. This court said you're bound by them because it's referenced. One thing she doesn't discuss, which to me I would have liked to see her discuss, is what she thinks the value of the overpayment is. And should that be something, when you're thinking about it, because what 158 says is as justice requires. It seems to me that if I were attempting to characterize the refusal to do equity as an abuse of discretion, what I might say is you didn't talk about what one of the things that you really need to think about is, which is how much is the overpayment. Is this case the same if it's $100 million? May I address that, Your Honor, briefly?  First of all, under the Lexington insurance case cited in our papers and in the district court's papers, you can't rewrite the terms of a contract. So where is the number in the middle? The district court is not permitted to do that as a matter of law. And with respect to, Your Honor, that inquiry that you said was missing, I would submit to Your Honor that after the findings of fact and rulings of law, remember at the end, we looked at it earlier, the bottom of page 31, the court invited briefing. Do I, as a district court judge, have the authority to fashion a more appropriate number in my mind? And the court heard briefing from both parties, had oral argument. DAWA even submitted an extra brief outside the briefing schedule. And the law is clear. Under Kansas v. Nebraska, only the U.S. Supreme Court, sitting in its original jurisdiction, has the power to change numbers to prevent war between states. Thank you, counsel. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Thank you. May it please the Court again. Darren Janis on behalf of DAWA. Judges, there are three things that I, time permitting, would like to address. One being the restatement section 158 issue that was just being discussed. The other being why was Mr. Jong getting an extra $480,000? I believe Judge Ricklamen, you asked that question. And then the third one is kind of a combination of questions from Judge Lynch and Judge Aframe about the restatement saying that the Court may reform a contract. So I'll start with Section 158. And I think Judge Lynch hit this on the head that the problem was that Judge Talwani refused to exercise the equitable power that she had. Section 158 of the restatement is clear. It says, and this is the introductory note to Chapter 6 of the restatement, it says Section 158 makes it clear that if these rules will not suffice to do substantial justice, it is within the discretion of the Court to grant relief on such terms as justice requires. Well, what is substantial justice in this case? The parties, we all know what they intended to agree to. That's clear from Judge Talwani's findings. And Dahua paid the $680,000. She says there's no dispute about that. They paid it. He got it. He also got the extra $480,000. He stayed silent until the deal was done. Everybody got exactly what they intended to get from this agreement. That is abundantly clear. That is substantial justice. A judgment for $16 million is not. Toraro is authority that a court can exercise this power and fashion an equitable remedy. And that's exactly what it did. How it got there is not as important as the fact that what it saw was that the mistake doctrines, as stated in the restatement, did not do substantial justice. So it did that. Do you want to quickly cover your last point? I'll give you one more minute. Thank you, Judge. The reason he got, well, I'm going to focus on the cases here with the questions from Judge Lynch and Judge Aframe. The problem, when you look at the other cases, like this court's case in One Beacon, the SJC's decisions in Polaroid and Quran, although reformation is a discretionary doctrine, an equitable doctrine, the courts have made clear that if you satisfy the requirements for reformation, as stated in the restatement, they are going to apply reformation. And the problem here isn't that Judge Talwani said, I'm not going to reform the contract because I think as an equitable matter I shouldn't. The problem is she said, I don't think I can as a matter of law. So she made an error of law. And when errors of law have been made in One Beacon and Polaroid, the Court of Appeals has simply rendered the judgment that should have been rendered. And the error of law is she cited German or that there was a point agreed on and her finding that there wasn't was a mistake, which seems factual to me. But just narrow it down. What is the error of law you just have? The error of law is that she applied German instead of applying what this court said the law is in One Beacon, what the SJC said the law is in Polaroid and Quran, and what the restatement says the law is, which is that if there is an agreement on a specific point. And her opinion is actually internally inconsistent because she does say the point point and then says the German point. I mean, it's all in the same paragraph. It's terribly inconsistent. I understood you just to have argued that even if you look at it under Section 158, she committed errors of law because she adopted principles that precluded her from actually exercising equitable discretion. And the Massachusetts courts have been clear that principles of equity and fairness caution against producing a windfall. G4S Tech versus Mass Tech Park 2018. That's absolutely right, Judge Lynch. And that is your argument. It is our argument. And the reason that's our argument is because under the mistake doctrines, the objective is not the finality of contracts. It's actually the opposite. The objective of the mistakes doctrine is to enforce what the parties mutually intended. At the end of the day, that's the purpose. And when you don't know what they intended, but you believe that what was in the written document, they neither believe was the thing. Because they just understand from their course of dealings that it wouldn't have been this. But that doesn't mean that what the mistake is is the thing we agreed to. So, in other words, 680, that's not it. But it's not 11 million either. Then what? Because you're telling me it's got to be 680. But what if I think that was never agreed to, but they all knew it wasn't 11 million. Then what? The reason I'm telling you it's 680 is because that's what Judge Talwani said it was. She said the mistake was setting it forth as $680,000 per month instead of $680,000 payable over 16 months. She gave us what the mutual intent was. It was $680,000 over 16 months. Okay, but let's assume she had some equitable power under either 155 or 158 to reach a sum between the 680 and the $11 million. I believe that in your arguments before the trial court, you conceded that she could understand her equitable discretion that way. You seem, before us, to be saying, no, there is no option of a sum between the two. It's 680 or nothing. I think that on the findings of fact that we have before us, it would have to be what the parties had agreed to because that's what everybody did. Well, you're now taking inconsistent positions. Let me put it this way, Judge Lynch. If this court were to remand that issue and to tell the district judge that she needs to come up with what the substantial justice is and to exercise that discretion, then that's what she would do. But I think that this court also has its own equitable power and its own discretion under Section 158 to look at the record, to look at the facts, and to determine what substantial justice is and to render the judgment that should have been rendered. Thank you, counsel. Thank you. Thank you, counsel. That concludes arguments.